[Civil No. 4011. Filed October 31, 1938.]

[83 Pac. (2d) 784.]

J. S. OLIVE, Petitioner, v. THE INDUSTRIAL COMMISSION OF ARIZONA, J. NEY MILES, SAM W. PROCTOR and L. C. HOLMES, as Members of and Constituting The Industrial Commission of Arizona, and W. G. TOLLESON, Respondents.

Messrs. Armstrong, Kramer, Morrison, Roche & Duffy, for Petitioner.

Messrs. Palmer & Cornelius, for Respondent W. G. Tolleson.

LOCKWOOD, J.—J. S. Olive, hereinafter called petitioner, has brought an award of the Industrial Commission, hereinafter called the commission, before us for review. The admitted facts are as follows:

On November 11, 1936, and for some time prior thereto, petitioner was employed as a carpenter's helper by W. G. Tolleson. On that date petitioner was working on the roof of a dwelling being erected for his employer, and while in the course of his employment stepped from the roof on to an adjacent staging, when a plank broke and he was thrown to the ground. He received many minor bruises, but his chief injury was a rupture of the spleen. He was immediately taken to a hospital, and in order to save his life, it was necessary to remove the entire spleen, which was done. Thereafter he received three separate blood transfusions and gradually regained his health, to some extent at least. Application was duly made to the commission for compensation, and on investigation it was found that petitioner's employer was not insured for compensation under the law, although both he and petitioner were subject to its terms and to the jurisdiction of the commission. An award for total temporary disability was made in favor of petitioner under section 1433, Revised Code 1928. He eventually recovered sufficiently to resume his work, which was at times that of a carpenter's helper and at other times that of a lettuce cutter and packer. However, it was recognized by all parties that the removal of the spleen might cause a permanent partial disability, and in the

award the commission specially reserved jurisdiction to investigate and decide whether any permanent partial disability existed. No motion for rehearing was made on this award, which was entered on the 13th of March, 1937, and no further action was taken by the commission until petitioner requested an investigation as to whether he was suffering from a partial permanent disability. A hearing on this question was held on the 12th of January, 1938, and the commission found that there was no permanent partial disability. Petitioner asked for a rehearing, which was granted, and the commission at such rehearing affirmed its award, which, so far as material, was in the following language:

"6. That said applicant because of said injury suffered the loss of his spleen, which loss did not result in any partial permanent disability,"

and denied further compensation, whereupon the matter was brought before us in the usual manner.

Petitioner sets forth the legal propositions, on which he bases his claim, in the following language:

"(1) When it is a known fact that a person has through an injury arising out of his employment suffered the loss of his entire spleen by removal, there is a conclusive presumption that he has been permanently disabled in part by reason of the organic loss, and unless that conclusive presumption is rebutted by substantial evidence he is entitled to compensation therefor.

"(2) Where a person suffers the loss of his spleen through an injury arising out of and in the course of his employment, and all of the affirmative evidence is to the effect that there is a partial permanent disability resulting therefrom and the only other evidence in the case is negative and does not give a definite opinion either one way or another on the matter, there is a partial permanent disability that is compensable.

"(3) While it is true that a finding of the Industrial Commission based upon a controverted issue of fact

will not be disturbed on review, if it appears that there is no substantial evidence to sustain the finding of the Industrial Commission, the reviewing court will set such award aside.

"(4) An award of the Industrial Commission to be sustained by the reviewing court must be supported by some evidence, and where it appears upon all the evidence in the case that there is no evidence upon which such an award may be sustained, the reviewing court will set it aside.''

Propositions 3 and 4 need no consideration, for they are obviously a correct statement of the law. Their application, however, to the present case must depend upon our determination of propositions 1 and 2, and we, therefore, confine our discussion to the latter. The first, in substance, is that there is a presumption of law that the removal of the entire spleen creates a permanent partial disability. No cases are cited by petitioner in support of this contention, nor have we been able to find any which hold that the removal of any particular organ of the body, as a matter of law creates a permanent disability, except where the statute specifically states such to be the case as, for instance, the loss of a hand, foot, eye, and the like. Nor do we think it logical that such a presumption exists with such an organ as the spleen. It is recognized by all of the medical witnesses that there is a conflict in medical authorities as to whether the spleen is essential for normal health, some of these authorities holding that it is not. Certainly in such a situation it would be improper for us to declare that, as a matter of law, the removal of the spleen is presumed to create a permanent disability. We think that it is a question of fact, to be determined by the proper triers of the fact upon competent evidence presented to them as to the actual existence of the disability claimed. We, therefore, answer the first proposition set forth above by stating that there is no legal presumption as to the

existence of any permanent disability on account of the removal of the spleen.

 The second proposition involves the comparative weight of positive and negative testimony. It is, of course, the general rule, supported by authorities from almost every jurisdiction, including this state, that the positive testimony of an unprejudiced, disinterested and unimpeached witness must prevail over purely negative testimony of a witness of the same character. *Southern Pac. Co.* v. *Fisher*, 35 Ariz. 87, 274 Pac. 779; *Illinois Bankers' Life Assn.* v. *Theodore*, 44 Ariz. 160, 34 Pac. (2d) 423. But we think it will be found upon an examination of every case cited by petitioner, as well as of those decided in this jurisdiction, that the evidence must be as to the actual existence of the disputed fact, to the sensory knowledge of the witness, and not as to his opinion as to the existence of the ultimate fact, based solely upon inferences drawn from an existing and admitted fact. One of the commonest examples of true positive and negative testimony is where there is a dispute as to whether a whistle was blown or bell rung by an engineer. In such a case the issue is as to the existence of a physical fact, and the ringing of a bell or the blowing of a whistle is apparent to the physical senses of one witness, while it is not to another one. Here the existence or nonexistence of the ultimate fact, that of permanent disability, can only be inferred from certain pre-existing, definite, physical facts, and is but the opinion of the witnesses as to whether such disability has followed or necessarily does follow from the admitted facts.

We have, on the one hand, the testimony of Dr. Norman A. Ross who removed the spleen of petitioner and who examined him repeatedly thereafter, and that of Dr. R. F. Palmer, one of the medical advisers of the commission, both of whom made the following finding:

"This case was again reviewed and present conditions noted. As stated in report of February 6, 1937 we are of the opinion that there is a minimum of 25% permanent partial general disability resultant from the operative removal of the spleen. This contemplates a fairly normal blood picture at this time and Dr. Ross has made arrangements with the Laboratory for securing a blood examination. If marked discrepancy is shown in the blood picture, either as to excessive leucocytosis or excessive reticulo-endothelial, the disability should be increased about 10%. If in the course of the next two years marked blood changes occur, it should be considered as additional disability over and above the 25% recommended at this time."

On the other hand, we have the report of the medical rating board, signed by six of the leading physicians of Arizona, reviewing the entire history of the case and obviously accepting the statements of Doctors Ross and Palmer as to the objective physical condition of petitioner as correct. The conclusions of the board are stated as follows:

"The conclusions of the Board in this case were as follows: After making thorough physical examination of this patient, giving consideration to the history and the possibilities of any disability on account of the removal of the spleen, the Board concludes that there is no evidence of disability resulting from the injury and that this patient can continue at his usual occupation. They advise that he be kept under observation for a period of two years with check on his blood condition about every six months. If nothing definitely abnormal is found during this period, he can then be discharged from observation."

We think it is plain that this is not a case of positive and negative testimony, within the meaning of the rule, but rather one of agreement as to the positive objective facts but a disagreement as to the subjective result to be inferred from these facts. The opinion of the medical rating board is just as definite and positive that at

the time of the award there was no existing disability as was the opinion of Doctors Ross and Palmer that such disability was present. This being the case, we are bound by the rule so often repeated by this court, and admitted by petitioner in his propositions 3 and 4. *Ison* v. *Western Veg. Distributors,* 48 Ariz. 104, 59 Pac. (2d) 649.

The award is affirmed.

McALISTER, C. J., and ROSS, J., concur.